Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7617 | **DATE** | 3/28/2000 |
| **CASE TITLE** | Peter C. Stearns vs. Navigant Consulting, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order regarding appointment as lead counsel.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 29 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER C. STEARNS, on behalf of himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NAVIGANT CONSULTING, INC.; ROBERT P. MAHER; TIMOTHY D. KINGSBURY; BARRY S. CAIN; STEPHEN J. DENARI; and CHARLES A. DEMIRJIAN, <br><br> Defendants. | No. 99 C 7617 <br><br> Judge Ruben Castillo |

## **MEMORANDUM OPINION AND ORDER**

This securities fraud action was filed on November 23, 1999, the day after various news sources revealed a series of loans from the defendant, Navigant Consulting, Inc., to its officers and, allegedly as a result of that revelation, a precipitous decline in the price of Navigant's stock. Predictably, Mr. Stearns was not the only Navigant stockholder to complain; he was simply the first. Thus, on January 27, 2000, we consolidated the approximately 20 lawsuits filed against Navigant with this action.[1] (R. 22, Minute Order.)

---

[1] The nineteen cases consolidated with this one are *Friedman v. Navigant*, No. 99 C 7633; *Levitin v. Navigant*, No. 99 C 7664; *Bell v. Navigant*, 99 C 7668; *Greb v. Navigant*, No. 99 C 7669; *Piven v. Navigant*, No. 99 C 7674; *Ladig v. Navigant*, 99 C 7684; *Milton Roslyn v. Navigant*, No. 99 C 7686; *Crown Holdings v. Navigant*, No. 99 C 7754; *Mullvihill v. Navigant*, No. 99 C 7836; *Morrison v. Navigant*, No. 99 C 7868; *Rosenwald v. Navigant*, No. 99 C 7951; *Abdullah v. Navigant*, No. 99 C 7984; *Mirsky v. Navigant*, No. 99 C 7984; *Klar v. Navigant*, No. 99 C 8020; *Martin v. Navigant*, No. 99 C 8162; *Pasternak v. Navigant*, No. 99 C 8187; *McGuire v. Navigant*, No. 99 C 8207; *Cleenput v. Navigant*, No. 00 C 126; and *Joseph Amin v. Navigant*, No. 00 C 448.

Simultaneously, and in accordance with the Private Securities Litigation Reform Act of 1995 ("Reform Act"), 15 U.S.C. § 78u-4(a)(3), we ordered briefing on the several pending motions for appointment of lead plaintiff and counsel. We scheduled a hearing for February 18, 2000 to resolve the motions. After carefully considering all of the submissions, we appointed the Policeman and Fireman Retirement System of Detroit as the lead plaintiff, represented by the Chicago law firm of Robinson, Curley & Clayton as lead counsel and the New York law firm of Bernstein, Litowitz, Berger & Grossmann ("Bernstein Litowitz") as co-counsel.[2] (R. 38, Minute Order of Feb. 18, 2000.)

Although we have already decided the § 78u-4(a)(3) issue, we write today because, shortly before the February 18 hearing, allegations of attorney misconduct arose surrounding activities related to the lead plaintiff motions. Specifically, Bernstein, Liebhard & Lifshitz ("Bernstein Liebhard") accused counsel from Bernstein Litowitz of contacting its clients without the prior permission of Bernstein Liebhard, thereby violating Rule 4.2 of the Rules of Professional Conduct for the Northern District of Illinois.

At the hearing, counsel from Bernstein Litowitz admitted contacting parties purportedly represented by Bernstein Liebhard without that firm's permission, but maintained that it did so for the purpose of clarifying whether those parties had consented to being lead plaintiffs in this action. Bernstein Litowitz contended that the parties purportedly represented by Bernstein Liebhard did not realize that the claim forms they signed contained a representation agreement

---

[2] Bernstein Litowitz represents the institutional investor with the largest financial stake in the outcome of this lawsuit and, for this reason, we appointed it co-lead counsel as required by the Reform Act. Additionally, as stated below, we found that Bernstein Litowitz did not intentionally violate Rule 4.2.

and, instead, believed they were simply preserving their claims against Navigant. In other words, Bernstein Litowitz accused Bernstein Liebhard of misleading investors into "registering" with it for the purpose of being appointed lead counsel.

Other courts have written extensively on the unintended consequences of Congress' attempt, via the Reform Act, to encourage the selection of a lead plaintiff with a significant financial stake in the outcome of the securities fraud lawsuit. *See, e.g., Sakhrani v. Brightpoint, Inc.*, 78 F. Supp.2d 845 (S.D. Ind. 1999); *In re Network Assocs., Inc. Securities Litigation*, 76 F. Supp.2d 1017 (N.D. Cal. 1999). Instead of encouraging competition for the position of lead plaintiff among parties with a substantial interest in the case, the Reform Act encourages lawyers to aggressively solicit clients in the hopes of aggregating their individual losses, and thus represent the "group of persons" with the "largest financial interest in the relief sought by the class," thereby gaining appointment as class counsel under § 78u-4(a)(3)(B)(iii) and (v).

We will not duplicate the excellent explication of the problem produced in *Sakhrani* and *Network Associates*. Moreover, we will not reproduce the reason why the strategy employed by Bernstein Liebhard is futile: again, *Sakhrani* and *Network Associates* thoroughly and correctly demonstrate why such "groups of persons" are improper representatives for a class under the Reform Act's requirements.

We concluded, at the hearing, that Bernstein Litowitz in no way intended to violate Rule 4.2 and, in fact, did not violate the letter of Rule 4.2, but that it skated very close to the edge. Bernstein Liebhard's motion for disqualification merited and received serious consideration from this Court. Bernstein Litowitz's contact with parties who signed agreements with Bernstein Liebhard certainly appears improper and, had Bernstein Liebhard's actions been totally

blameless, the outcome might have been otherwise. At that hearing, counsel for Bernstein Litowitz insisted that he would have acted the same way even with the benefit of 20/20 hindsight. We therefore write to clarify appropriate procedures to comply with Rule 4.2 when suspecting a colleague of nefarious tactics under the Reform Act.

Prudence dictates avoiding even the remote appearance of impropriety. Almost five years ago, we addressed the proper way to comply with Rule 4.2. *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 909 F. Supp. 1116 (N.D. Ill. 1995). There, plaintiff's counsel surveyed pilots employed by the defendant about their training and experience dealing with icing conditions, a key issue in the lawsuit. Plaintiff's counsel argued that it was unclear whether their communication with the pilots was governed by Rule 4.2. Although this Court disagreed with that characterization, we concluded that attorneys, "when confronted with a need to obtain information from witnesses that might reasonably lead to ethical problems, must take a conservative rather than aggressive approach." *Id.* at 1122. Thus, when Rule 4.2 might be an issue, counsel must either "(1) follow the more restrictive interpretation of the rule; (2) contact opposing counsel; or (3) seek guidance from the Court." *Id.* at 1123.

We have speculated why more lawyers do not follow the careful ethical approach outlined in *In re Air Crash Disaster*. Recently a national law journal provided the answer: "[T]here is a very good reason you don't want to ask for approval in advance – the same reason all teen-agers know by instinct: If you ask for permission, you may not get it." Jerold S. Solovy & Robert L. Byman, *Discovery: Ex Parte, Brutus?*, Nat'l L.J., March 27, 2000, at A20. We are disappointed that two such well-respected attorneys would dispense such advice. But Solovy and Byman's identification of the tactic as adolescent, even juvenile, is entirely accurate. We

hope, however, that lawyers, supposedly mature and sophisticated professionals, would renounce such puerile strategies and instead comport themselves as is appropriate in judicial proceedings.

In this case, Bernstein Litowitz should have brought its concerns regarding Bernstein Liebhard's claim forms to our attention before contacting anyone who signed one. Even though Bernstein Litowitz had prior informal relationships with some of the parties who signed the form, the form itself purported to establish a formal relationship between the signatory and Bernstein Liebhard. Moreover, the consolidated proceedings before this Court were already underway when Bernstein Litowitz attempted these contacts. Obtaining permission from this Court, even on an ex parte basis, would have been the most appropriate way to gain the information it needed under the Reform Act and comply with the dictates of Rule 4.2. Bernstein Litowitz exercised extremely poor judgment in communicating with those parties without prior leave of either this Court or Bernstein Liebhard.

We have prepared this opinion to indicate that, from this day forward, this Court will consider the general bar advised: any law firm seeking appointment as lead counsel under the Reform Act that violates either the spirit or letter of Rule 4.2 will be subject to disqualification. If there is a question about the propriety of contacting a party or witness, counsel would be well advised to seek our guidance or obtain opposing counsel's permission. We hope our colleagues will follow this opinion and, in that manner, avoid some of the unfortunate and unintended consequences of the Reform Act.

ENTERED:

District Court Judge Ruben Castillo

Date: March 28, 2000